

FILED IN OPEN COURT
U.S.D.C. - Atlanta

NOV 15 2018

JAMES N. HATTEN, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MANI CHULPAYEV<br>  a/k/a MANI CHILPAYEN<br>  a/k/a IMMANUEL COHEN;<br>LYLE STEPHEN LIVESAY; AND<br>KIMBERLY ANN REISS | Criminal Indictment<br><br>No.  1 18 - C R - 4 4 9<br><br>**UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

**Count One**
**(Conspiracy to Commit Bank and Mail Fraud)**

1. Beginning on a date unknown, but at least as of May 2012, continuing through at least July 2016, in the Northern District of Georgia and elsewhere, the Defendants,

MANI CHULPAYEV a/k/a MANI CHILPAYEN a/k/a IMMANUEL COHEN,

LYLE STEPHEN LIVESAY, AND

KIMBERLY ANN REISS,

did willfully and knowingly combine, conspire, confederate, agree and have a tacit understanding with others known and unknown (1) to violate Title 18, United States Code, Section 1344, that is, to commit bank fraud, an offense against the United States, that is to knowingly execute and attempt to execute a

scheme and artifice to defraud Wells Fargo, Space Coast Credit Union, Pentagon Federal Credit Union, and other financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation and the National Credit Union Share Insurance Fund, and to obtain and attempt to obtain moneys, funds, credits, assets, and other properties owned by and under the custody and control of those financial institutions by means of materially false and fraudulent pretenses, representations, and promises, as well as by omission of material facts; and (2) to violate Title 18, United States Code, Section 1341, that is, to commit mail fraud, an offense against the United States, that is to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property through the use of materially false and fraudulent pretenses, representations and promises, as well as by omission of material facts, and, in so doing, cause the United States Postal Service and other private and commercial interstate carriers to be used in furtherance of said scheme and artifice to defraud, with said scheme and artifice to defraud affecting a financial institution.

### Manner and Means

2. Beginning prior to May 2012, Defendants agreed with each other and other individuals to participate in a scheme to obtain car loans from financial institutions using false pretenses. Specifically, Defendants recruited individuals with good credit history to act as straw purchasers to obtain car loans. At other times Defendants recruited individuals with poor credit history with promises of fixing their credit in part by obtaining car loans. Defendants provided the straw

purchasers with purchase orders and other documents including, in many cases, fraudulent pay check earning statements, to present to financial institutions in support of the loan applications. In some cases the cars that were purported to be the basis for the loans were not actually available for purchase, for example, having previously been exported to another country, stolen, or otherwise rendered unavailable for possession by the purchasers. In some other cases the Defendants created documents listing the sellers of cars as corporate entities controlled by Defendants, but the cars were not actually possessed or being sold by those corporate entities.

3. When the loan applications were approved, financial institutions drafted checks representing loan proceeds and transmitted them via the United States Postal Service and other private or commercial interstate carriers to Defendants, others acting with them, or to local financial institution branches where the checks were hand delivered to Defendants or their associates.

4. Defendants and others acting with them deposited proceeds from the loans into bank accounts controlled by Defendants, and then transferred the funds to other bank accounts.

5. Additionally, the straw purchasers had no intention to personally possess or use the cars for which the loans were obtained; instead, pursuant to the scheme, the cars that had not been previously exported or otherwise rendered unavailable were possessed and controlled by Defendants and others acting with

them, and then further rented or leased out to other individuals. Neither Defendants nor the straw purchasers disclosed to the financial institutions that the true intent was to transfer the cars to other individuals, sometimes in other states or countries. Defendants and others acting with them accepted cash payments from these individuals for use of the cars, and instructed the users of the cars to deposit funds, frequently cash, into various financial accounts controlled by Defendants.

6. Many of the individuals ultimately using the cars were known by Defendants to be drug traffickers. Some of these drug traffickers lived and used the cars in the Northern District of Georgia, and paid for use of the cars by making cash deposits of drug proceeds into bank accounts controlled by Defendants.

7. Furthermore, Defendants' scheme often involved straw purchasers obtaining multiple car loans from different financial institutions in a short period of time so that the new loans would not show up on the straw purchasers' credit reports when making new loan applications. As part of the scheme, the straw purchasers did not disclose the recent car loans as debts or financial obligations on their loan applications.

8. As a part of Defendants' scheme, payments for the car loans were initially made by Defendants, people working with them, or even the straw purchasers themselves. However, in many cases the payments eventually stopped and the

loans became delinquent. When the financial institutions attempted to repossess the cars, because the cars had been transferred to other individuals, sometimes in other states or countries, the financial institutions were unable to locate them.

All in violation of Title 18, United States Code, Section 1349.

## Count Two
### (Money Laundering Conspiracy)

9. Paragraphs 2 through 8 of this Indictment are re-alleged and incorporated by reference as if fully set forth here.

10. Beginning on a date unknown, but at least as of May 2012, continuing through on or about July 2016, in the Northern District of Georgia and elsewhere, the Defendants,

MANI CHULPAYEV a/k/a MANI CHILPAYEN a/k/a IMMANUEL COHEN,

LYLE STEPHEN LIVESAY, AND

KIMBERLY ANN REISS,

did knowingly combine, conspire, confederate, agree and have a tacit understanding with others known and unknown, to commit certain offenses under Title 18, United States Code, Section 1956, as follows:

    a. to knowingly conduct and attempt to conduct financial transactions in and affecting interstate commerce, which transactions involved the proceeds of specified unlawful activities, that is, the proceeds of bank fraud, mail fraud, and the felonious manufacture, importation,

receiving, concealment, buying, selling and otherwise dealing in a controlled substance punishable under a law of the United States, and that, while conducting and attempting to conduct such financial transactions, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing the transactions were designed in whole and in part to promote the specified unlawful activities and to conceal and disguise the nature, source, ownership, and control of proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1).

All in violation of Title 18, United States Code, Section 1956(h).

## Forfeiture

11. As a result of committing one or more of the offenses alleged in Count One of this Criminal Indictment, the Defendants,

MANI CHULPAYEV a/k/a MANI CHILPAYEN a/k/a IMMANUEL COHEN,

LYLE STEPHEN LIVESAY, AND

KIMBERLY ANN REISS,

shall forfeit to the United States, pursuant to 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including but not limited to

a sum of money equal to the amount of proceeds the Defendants obtained as a result of the offenses for which the Defendants are convicted.

12. As a result of committing one or more of the offenses alleged in Count Two of this Criminal Indictment, the Defendants,

MANI CHULPAYEV a/k/a MANI CHILPAYEN a/k/a IMMANUEL COHEN,

LYLE STEPHEN LIVESAY, AND

KIMBERLY ANN REISS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in such offenses and all property traceable to such offenses, including, but not limited to the a sum of money equal to the total amount of money involved in each offense for which the Defendants are convicted.

13. If, as a result of any act or omission of the Defendants, any property subject to forfeiture:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third person;

      c. has been placed beyond the jurisdiction of the Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be subdivided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), and Title

28, United States Code, Section 2461(c), to seek forfeiture of any other property of the Defendants up to the value of the forfeitable property.

A _____True_____ BILL

_____/s/_____
FOREPERSON

BYUNG J. PAK
*United States Attorney*

*/s/ Garrett L. Bradford*

GARRETT L. BRADFORD
*Assistant United States Attorney*
Georgia Bar No. 074374

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181