# EXHIBIT A

(USAO GAN 6/10) Search Warrant

## United States District Court
### NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Black Apple Iphone 5 Surrounded By A Pink And Green Otterbox Case

APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT
Case number: 1:13-MI-1844

**SEALED**

I, Joseph M. Simone, being duly sworn depose and say:

I am a Task Force Officer of the Drug Enforcement Administration and have reason to believe that on the property described as:

Black Apple Iphone 5 Surrounded By A Pink And Green Otterbox Case

FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 20 2013

JAMES N. HATTEN, Clerk
By:

in the Northern District of Georgia there is now concealed certain property, namely,

See Attachment A.

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 18, United States Code, Section(s) 1956 and 1957; Title 18, United States Code, Section(s) 1344; Title 18, United States Code, Section(s) 1343; and Title 21, United States Code, Section(s) 841 and 846. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on attached sheet made a part hereof.

Sworn to before me, and subscribed in my presence

Signature of Affiant
Joseph M. Simone

December 20, 2013
Date

Atlanta, Georgia
City and States

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Garrett L. Bradford

Signature of Judicial Officer

# ATTACHMENT A

1. **Object**

   A. The listed SUBJECT TELEPHONE, namely a Black Apple iPhone 5 Surrounded By A Pink And Green Otterbox Case, which is currently in DEA custody.

2. **Search Procedure**

   A. Law enforcement personnel will review and examine all data and information stored on/in the SUBJECT TELEPHONE and determine the information to be seized by law enforcement personnel in accordance with Section 3 of this Attachment.

3. **Information to be Seized by Law Enforcement Personnel**

   A. Any and all stored communications, data, and files stored in/on the SUBJECT TELEPHONE, including but not limited to, phone directory information, note pad, content of stored text messages or other electronic communications, stored voice mail or other audio messages, recordings of incoming calls, calendar information, all of which are stored or saved in the above listed electronic device and/or the Subscriber Identity Module ("SIM") card associated with said device, which evidence the transportation, ordering, distribution, possession and sale of controlled substances, money laundering, bank or wire fraud, and/or connections to known and as yet unidentified co-conspirators in the investigation;

   B. Photographs, videos, records, other electronic media which show the transportation, ordering, distribution, possession and sale of controlled substances, money laundering, bank or wire fraud, and/or connections to known and as yet unidentified co-conspirators in the investigation; and

   C. Address and/or telephone and address books and other notes reflecting names, addresses (including email), and/or telephone numbers, showing the relationship between known and as yet unidentified co-conspirators in the investigation.

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
# FOR CELLULAR TELEPHONE

I, Joseph M. Simone, Task Force Officer with the Drug Enforcement Administration ("DEA"), being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. I submit this affidavit in support of an application for a warrant authorizing the search of the following cellular telephone, which is in DEA custody in Atlanta, Georgia having been seized on December 4, 2013, by the Broward Sheriff's Office in Broward County, Florida in connection with an investigation of the offense of Delivery of Cannabis by Amanda ROMANO:

### SUBJECT TELEPHONE:

**Black Apple iPhone 5, surrounded by a pink and green Otterbox case**

2. As set forth herein, I respectfully submit that probable cause exists to believe that in/on the SUBJECT TELEPHONE there exists evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1956 and 1957 (money laundering), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1343 (wire fraud), and 21 U.S.C. § 841 and 846 (narcotics trafficking).

3. The SUBJECT TELEPHONE is currently in the possession of the DEA in Atlanta, Georgia in the Northern District of Georgia.

4. I am a Detective with the Sandy Springs, Georgia Police Department currently assigned to the Atlanta High Intensity Drug Trafficking Area (HIDTA) Task Force as a U.S. Drug Enforcement Administration (DEA) Task Force Officer

(TFO). I am State of Georgia P.O.S.T. certified and have been employed by the Sandy Springs Police Department for approximately seven years. Prior to that, I was employed by the Fulton County, Georgia Police Department for approximately 11 years. In connection with my official duties, I investigate criminal violations of drug laws and related offenses, including, but not limited to, violations of Title 21, United States Code, Sections 841, 843, 846, 848, 856, 952, 960, and 963, and Title 18, United States Code, Sections 2, 1952, 1956, and 1957; and O.C.G.A. Title 16, Chapter 13. I have received specialized training in the enforcement of the drug laws. I have participated in over one hundred narcotics/drug cases and am well versed through my experience in the tactics, techniques and method of operation of individuals associated and involved in illegal narcotics distribution, and the methods and means they will use to launder their illegally earned narcotics proceeds. From my training and experience, I am aware of the considerable efforts narcotics traffickers and money launderers will use to conceal, disguise and hide their funds and assets from law enforcement as a way of protecting their illegally acquired wealth and avoiding forfeiture.

5. From my training and experience, I am also aware that narcotics traffickers and money launderers frequently utilize cellular telephones to conduct and further their illicit activities. I am aware that narcotics traffickers and money launderers use cell phones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names, addresses, and phone numbers of co-conspirators; obtain and store directions and maps;

maintain photographs of criminal associates; search the internet; and capture audio, image, and video files. Furthermore, I know that it is common for narcotics traffickers and money launderers to possess and use multiple cell phones to facilitate their unlawful conduct.

6. I make this affidavit based upon facts personally known to me and upon facts provided to me by other law enforcement officers. Since I am only submitting this affidavit for the limited purpose of securing a search warrant, I have not included all the facts known to me in this affidavit. Rather, I have included only those facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant.

7. Based on the information in this affidavit, I respectfully submit that there is probable cause to believe that the SUBJECT TELEPHONE contains evidence, contraband, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1956 and 1957 (money laundering), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1343 (wire fraud), and 21 U.S.C. § 841 and 846 (narcotics trafficking).

## II. BACKGROUND OF THE INVESTIGATION

8. In connection with an investigation into a marijuana and cocaine distribution network operating in the Atlanta metro area, the High Intensity Drug Trafficking Area ("HIDTA") Task Force in Atlanta identified Mani CHILPAYEN, aka Mani Chulpayev, as the leader of a large criminal enterprise that launders money for a number of narcotics traffickers. Specifically, CHILPAYEN operates a luxury car leasing business for known narcotics traffickers, charging his clients large cash down payments and monthly fees

while providing them with anonymity by keeping the cars registered in the names of business entities or other individuals. Additionally, CHILPAYEN obtains cars for use in his enterprise using a system of straw purchasers, bank fraud, and wire fraud. CHILPAYEN's enterprise has been operating in Georgia, Florida, North Carolina, New York, and likely other states.

9. CHILPAYEN was arrested in April 2013 and charged with murder and other crimes in Fulton County Superior Court in connection with the June 7, 2012, homicide of Melvin Vernell III, aka Lil Phat (a client of CHILPAYEN's business), outside Northside Hospital in Sandy Springs, Georgia. Since the arrest, CHILPAYEN's enterprise has been operated by CHILPAYEN's girlfriend, Amanda ROMANO, and brother, Ariel Chulpayev. Using telephone calls from jail to ROMANO and Chulpayev, CHILPAYEN has continued to direct the operations of the enterprise while incarcerated.

10. The investigation has revealed that CHILPAYEN's money laundering and fraud enterprise was structured as follows:

    a. CHILPAYEN maintained a fleet of 100+ cars, which he leased out to a clientele that is predominantly drug traffickers.

    b. In order to generate an inventory of vehicles for his car leasing business, CHILPAYEN's associates recruited a number of straw purchasers with good credit.

    c. In some instances a straw purchaser would go to multiple dealerships where their credit report was pulled to apply for financing. The straw purchaser then bought multiple luxury

vehicles in a short period of time and turned them over to CHILPAYEN's business. It was not until approximately 30 days later that the financial institutions learned that the straw purchaser had actually purchased multiple vehicles from different sources within a short period of time. By that time, the vehicles had already been transferred to CHILPAYEN's business and leased out to clients, and the financial institutions were unable to locate the vehicles to repossess them.

    d. CHILPAYEN rented out these vehicles to clients who provided him with a large cash down payment of $5,000 to $10,000. These clients then paid a monthly fee of $1,500 to $1,600 for continued use of the vehicle. CHILPAYEN sometimes directed clients to make their payments to bank accounts which were held in the name of an individual other than CHILPAYEN or his business entities.

    e. When CHILPAYEN leased vehicles to his clients, the vehicles remained registered in the name of one of CHILPAYEN's business entities or straw purchasers. This enabled his clients to prevent their identities from being associated with the vehicles.

    f. CHILPAYEN communicated with business associates and clients via text messages, e-mails, and telephone calls.

11. Many details about the criminal enterprise have been corroborated by CHILPAYEN himself. On April 12, 2013, CHILPAYEN was arrested in Broward County, Florida on murder charges out of Fulton County Superior Court. That

same day, after being read his Miranda rights by agents, CHILPAYEN waived his rights and agreed to answer questions asked by investigators. CHILPAYEN told agents the following:

    a. He rented out approximately 144 vehicles as a part of his enterprise.

    b. He estimated that approximately 80% of his clients were drug dealers.

    c. He obtained cars for his enterprise from straw purchasers or people who get in over their heads. He used at least one associate, P.C., to locate the straw purchasers and obtain financing for the vehicles.

    d. One of his clients, D.W., sold cocaine and marijuana in the Atlanta area and invested in CHILPAYEN's enterprise. D.W. gave CHILPAYEN cash payments of $100,000, $60,000, and $5,000 in April and May 2012.

    e. One of his clients, K.J., distributed cocaine and marijuana and paid CHILPAYEN approximately $140,000 in cash between 2010 and 2012.

    f. ROMANO was fully aware of the operations of the enterprise. She was an employee and had her own office in the business.

12. The investigation has not revealed a legitimate source of significant income for CHILPAYEN outside of his money laundering enterprise.

## III. PROBABLE CAUSE TO SEARCH THE SUBJECT TELEPHONE

13. Your affiant believes that the SUBJECT TELEPHONE, which belongs to ROMANO,[1] contains evidence of the money laundering and fraud activities of CHILPAYEN's criminal enterprise because, based on my experience and knowledge of this investigation, I believe that since CHILPAYEN's arrest in April 2013 ROMANO has served as CHILPAYEN's surrogate for handling his business and financial affairs, including the affairs of the criminal enterprise. For example:

   a. CHILPAYEN told agents during his April 12, 2013, interview that ROMANO, his girlfriend, is an employee of the car leasing business, has her own office in the business, and is fully aware of how he operates the business.

   b. Agents reviewed call data associated with ROMANO's known cellular phone number, which was obtained pursuant to subpoena and court order, and discovered that ROMANO has had frequent contacts with several known associates of CHILPAYEN's criminal enterprise since CHILPAYEN's arrest in April 2013.

   c. Agents have reviewed numerous recorded jail calls between CHILPAYEN and ROMANO since CHILPAYEN's arrest in which they discuss the affairs of the enterprise and CHILPAYEN directs

---

[1] During a recorded jail call on July 11, 2013, ROMANO told CHILPAYEN that she had an iPhone 5. Additionally, agents have observed ROMANO using an iPhone during surveillance, including on May 22, 2013.

ROMANO in how to operate the business. For example, agents have reviewed the following call:

   i. CHILPAYEN Jail Call on April 13, 2013

      1. In this call, CHILPAYEN told ROMANO to tell C.H., a known associate of CHILPAYEN, to change the passwords on the website CHILPAYEN uses to track the cars leased through his business.

d. Agents have also reviewed recorded jail calls in which ROMANO told CHILPAYEN that she had entered information about the criminal enterprise in her "notes," which agents believe is a reference to the "Notes" application on the SUBJECT TELEPHONE. For example, agents have reviewed the following call:

   i. CHILPAYEN Jail Call on April 13, 2013

      1. In this call, CHILPAYEN and ROMANO discussed using an electronic tracking system to determine the location of a vehicle leased out as part of his criminal enterprise. ROMANO stated that she had tracked the vehicle the previous night and entered the location in her "notes."

e. Agents have also reviewed recorded jail calls in which ROMANO told CHILPAYEN that she had taken photos with the SUBJECT TELEPHONE to document information about the criminal enterprise. For example, agents have reviewed the following call:

i. CHILPAYEN Jail Call on May 1, 2013

1. In this call, ROMANO told CHILPAYEN that S.S. gave her a check payable to one of the business entities CHILPAYEN uses to operate his criminal enterprise. ROMANO stated that she took a picture of the check using her phone and deposited the money into her bank account.

f. Agents have also reviewed recorded jail calls in which CHILPAYEN told ROMANO to send text messages to known criminal associates of CHILPAYEN's enterprise from the SUBJECT TELEPHONE. For example, agents have reviewed the following call:

i. CHILPAYEN Jail Call on May 3, 2013

1. In this call, CHILPAYEN told ROMANO to text "Fifty" that CHILPAYEN will be in Atlanta, and told ROMANO that "Fifty" can help find customers in Atlanta.

a. "Fifty" is a known criminal associate of CHILPAYEN.

14. Your affiant also believes that the SUBJECT TELEPHONE contains evidence of narcotic trafficking activity by ROMANO. As indicated below in the circumstances surrounding the seizure of the SUBJECT TELEPHONE, and in paragraph 17 in particular, agents believe the SUBJECT TELEPHONE contains

text messages concerning at least one incident of narcotics trafficking by ROMANO.

## IV. SEIZURE OF THE SUBJECT TELEPHONE

15. On December 3, 2013, Broward Sheriff's Office detectives received information that ROMANO was in possession of marijuana at 9431 Live Oak Place Apartment #306 in Davie, Florida (the "residence"). On December 4, 2013, detectives knocked on the door of the residence and ROMANO answered. Detectives advised that they were following up on a tip that ROMANO was possibly growing marijuana inside the residence. ROMANO denied growing marijuana and refused detectives' request to look inside the residence. Detectives left the apartment but set up surveillance outside the residence.

16. Shortly thereafter, detectives observed a male, later determined to be K.S.P., drive up and walk into the apartment with a black bag that appeared to be empty. K.S.P. later left the apartment carrying the black bag, which appeared to be heavier than when he arrived. After K.S.P. drove away, detectives approached him at a stop sign and a narcotics canine alerted to the presence of narcotics inside K.S.P.'s vehicle. Detectives inspected the black bag and found approximately 6 grams of material that field tested positive for marijuana, a glass marijuana pipe with suspected marijuana residue, and a digital scale.

17. K.S.P. gave detectives a post-Miranda statement in which he stated that ROMANO had called him a short time earlier and told him that the police had been at her residence and that she needed to get rid of some marijuana. In response, he drove to ROMANO's apartment with the black bag. ROMANO

placed marijuana and other items inside the bag in the residence. K.S.P. allowed detectives to view text messages on his phone with ROMANO that corroborated his statement to detectives.

18. Detectives went back to the residence and knocked on the door. ROMANO opened the door and detectives stated that she was under arrest. After detectives escorted ROMANO out of the residence, they asked her for her cell phones. She stated the cell phones were inside the residence, and handed detectives keys to the door of the residence. Detectives used the keys and retrieved two cell phones, one of which is the SUBJECT TELEPHONE.[2]

19. Detectives released ROMANO a short while later on the scene, advising her that the investigation would be documented and presented to the Broward State Attorney Office for review for the crime of Delivery of Cannabis. Detectives retained possession of both cell phones as evidence of the crime of Delivery of Cannabis.

20. Detectives forwarded the SUBJECT TELEPHONE to DEA agents in Miami, who forwarded the SUBJECT TELEPHONE to DEA agents in Atlanta, who received the SUBJECT TELEPHONE on December 13, 2013.

## IV. CONCLUSION

21. Based on the foregoing, I submit there is probable cause to believe that the SUBJECT TELEPHONE contains evidence, contraband, fruits, and instrumentalities of violations of federal law, in particular, 18 U.S.C. §§ 1956 and

---

[2] The other cell phone is not an iPhone.

1957 (money laundering), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1343 (wire fraud), and 21 U.S.C. § 841 and 846 (narcotics trafficking), as set forth with particularity in Attachment A, which is incorporated herein by this reference.

22. By this Affidavit and Application, I request that the Court issue a search warrant to allow for the search of the SUBJECT TELEPHONE for evidence, in accordance with the procedures listed in Attachment A.

# ATTACHMENT A

1. **Object**

   A. The listed SUBJECT TELEPHONE, namely a Black Apple iPhone 5 Surrounded By A Pink And Green Otterbox Case, which is currently in DEA custody.

2. **Search Procedure**

   A. Law enforcement personnel will review and examine all data and information stored on/in the SUBJECT TELEPHONE and determine the information to be seized by law enforcement personnel in accordance with Section 3 of this Attachment.

3. **Information to be Seized by Law Enforcement Personnel**

   A. Any and all stored communications, data, and files stored in/on the SUBJECT TELEPHONE, including but not limited to, phone directory information, note pad, content of stored text messages or other electronic communications, stored voice mail or other audio messages, recordings of incoming calls, calendar information, all of which are stored or saved in the above listed electronic device and/or the Subscriber Identity Module ("SIM") card associated with said device, which evidence the transportation, ordering, distribution, possession and sale of controlled substances, money laundering, bank or wire fraud, and/or connections to known and as yet unidentified co-conspirators in the investigation;

   B. Photographs, videos, records, other electronic media which show the transportation, ordering, distribution, possession and sale of controlled substances, money laundering, bank or wire fraud, and/or connections to known and as yet unidentified co-conspirators in the investigation; and

   C. Address and/or telephone and address books and other notes reflecting names, addresses (including email), and/or telephone numbers, showing the relationship between known and as yet unidentified co-conspirators in the investigation.

# United States District Court

## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Black Apple Iphone 5 Surrounded By A Pink And Green Otterbox Case

SEARCH WARRANT
Case number: 1:13-MJ-1844

**SEALED**

TO: Task Force Officer Joseph M. Simone, and any Authorized Officer of the United States

Affidavit(s) having been made before me by Joseph M. Simone who has reason to believe that on the property described as:

Black Apple Iphone 5 Surrounded By A Pink And Green Otterbox Case

in the Northern District of Georgia there is now concealed certain property, namely,

See Attachment A.

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 18, United States Code, Section(s) 1956 and 1957; Title 18, United States Code, Section(s) 1344; Title 18, United States Code, Section(s) 1343; and Title 21, United States Code, Section(s) 841 and 846. I find that the affidavit(s) establishes probable cause to search for and seize the certain property from the property described above.

YOU ARE HEREBY COMMANDED to execute this warrant on or before __1/3/14__ (not to exceed 14 days) IN THE DAYTIME (6 a.m. – 10 p.m.). You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a copy of the warrant and receipt at the place where the property was taken. The officer executing the warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Russell G. Vineyard.

December 20, 2013 at 5:40 pm
Date and Time Issued

at Atlanta, Georgia
City and States

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Garrett L. Bradford

_Russell G. Vineyard_
Signature of Judicial Officer